NO. 07-06-0296-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 27, 2007

_____


DARRYL MOSELEY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 399TH DISTRICT COURT OF BEXAR COUNTY, TEXAS;

NO. 2005-CR-4353; HONORABLE JUANITA A. VASQUEZ-GARDNER, JUDGE

_____

Before CAMPBELL, HANCOCK and PIRTLE, JJ.


**OPINION**


A jury convicted Appellant, Darryl Moseley, of the offense of murder and assessed his sentence at confinement for life.  Presenting five points of error, he contends:

(1) and (2) his confession should have been suppressed because it was coerced by the police and involuntary;

(3) his subsequent statement to the media admitting his guilt should also have been suppressed as "fruit of the poisonous tree";

(4) the recordings of his custodial telephone conversations were illegal; and

(5) the evidence regarding his gang affiliation was inadmissible.

We affirm the judgment of the trial court.

## Background Facts

On March 11, 2005, the San Antonio Police Department received a report of a burglary at 9523 Millbrook. Upon investigation of that burglary, the police discovered a large volume of blood present throughout the residence. Although no body was found, crime scene investigators believed that they were dealing with a murder scene, not a burglary. Investigators soon identified Appellant as a person of interest based upon the fact that in the days immediately preceding the burglary report he had been staying at the residence with the consent of the legal occupant.

On the same day, but unrelated to the burglary report, the San Antonio Police Department received a missing persons report from the parents of 18-year-old Ashley Lynn Degerstrom. Ashley's parents had become concerned when she did not call nor return home as expected. In addition to the missing persons report, Ashley's parents reported her vehicle, a blue Dodge Neon, as being stolen.

The next day an officer with the San Antonio Police Department Helicopter Detail Unit observed a vehicle matching the description of Ashley's Dodge Neon pull into an apartment complex. That officer observed a black male wearing a red sleeveless shirt, black shorts, and a bandana exit the driver's side of the vehicle and run towards the back of the apartment units. These observations were relayed to officers on the ground who were in the immediate area of the apartment complex. Detectives soon arrived, observed the blue Dodge Neon, and confirmed that the license plate matched that of Ashley's vehicle. Appellant was located in one of the nearby apartment units and was placed under arrest for an unrelated felony warrant.[1] Appellant was placed in the backseat of a marked patrol vehicle and was read his *Miranda* warnings by Detective Timm Angel.

While Appellant sat in the patrol vehicle, officers reached inside the stolen vehicle, popped the trunk, and discovered Ashley's body. Based upon this discovery, Appellant was transported to the homicide division of the San Antonio Police Department.

Upon arrival at the police department, Appellant was interviewed by Detectives Timm Angel and John Slaughter after again being given his *Miranda* warnings. The interview was recorded on DVD. During the interview, Appellant never requested an attorney, nor invoked his right to remain silent; however, he was freely permitted to make several telephone calls. Although Appellant initially denied knowing Ashley, after going

---

[1]Appellant was arrested pursuant to a previously issued, unrelated warrant for the offense of Unauthorized Use of a Motor Vehicle.

3

through many different versions of what occurred, he eventually confessed to killing Ashley. In that interview Appellant admitted to hitting Ashley with his fist, beating her with a miniature baseball bat, kicking her with his foot, strangling her, and shoving her body into the trunk of her own vehicle. Appellant also admitted to driving around in Ashley's vehicle, with her body in the trunk until he was arrested. Based upon this confession, investigators sought and obtained an arrest warrant for murder.

After the interview was completed, Appellant was transported from the interview room of the police department to the detention center. While being moved to a police vehicle for transportation, members of the media asked Appellant questions concerning the homicide. Appellant responded by admitting that he had killed Ashley Degerstrom.

### Voluntariness of Confession

By his first and second points of error, Appellant contends that the trial court erred by failing to suppress the confession given to Detective Slaughter because the confession was the product of illegal police coercion, in violation of the Constitutions of both the United States and the State of Texas.

As to Appellant's second point, we need not decide whether the Texas Constitution provides any greater protections than that of its federal counterpart, because Appellant presents no argument or authority as to that issue. As such, Appellant's argument is inadequately briefed and presents nothing for this Court to review. Appellant's second

point of error is waived. *See* Tex. R. App. P. 38.1(h); *Johnson v. State*, 853 S.W.2d 527, 533 (Tex.Crim.App. 1992) *cert. denied*, 510 U.S. 852 (1993).

Appellant, by his first point, questions the propriety of the trial court's denial of his motion to suppress. A trial court's ruling on a motion to suppress a confession is reviewed on an abuse of discretion standard. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). In determining whether the trial court abused its discretion we give "almost total deference to a trial court's determination of the historical facts" and review the court's application of the law to the facts *de novo. Guzman v. State,* 955 S.W.2d 85, 88-89 (Tex.Crim.App. 1997). Where the trial court has not made explicit findings of fact, we review the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact to support the ruling. *Carmouche v. State,* 10 S.W.3d 323, 327-28 (Tex.Crim.App. 2000). The decision of the trial court will be sustained if it is correct on any theory of law applicable to the facts of that case. *State v. Ross,* 32 S.W.3d 853, 856 (Tex.Crim.App. 2000).

When determining whether a confession should have been excluded for violation of the Constitution of the United States, we must decide whether the confession was voluntary or coerced. *See Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991); *Colorado v. Connelly,* 479 U.S. 157, 167 (1986). We determine the voluntariness of a confession by examining the totality of the circumstances surrounding the confession. *Creager v. State,* 952 S.W.2d 852, 856 (Tex.Crim.App. 1997). A confession will be considered

5

involuntary if it is the product of police conduct that was of such a nature that the statement was not the free and unconstrained statement of the accused. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex.Crim.App. 1995). The essential question to determine is whether the accused's free will was "overborne" by the circumstances surrounding the confession. *Dickerson v. U.S.,* 530 U.S. 428, 434 (2000). In answering that question, we must consider the "totality of the circumstances," including: (1) relevant facts about the interrogation itself, such as the physical location of the interrogation, the length of the detention, and the number of people present; (2) the extent to which the accused was denied access to outside resources, such as family, friends, or a lawyer; (3) whether the accused was denied essential physical needs, such as food, drink, or access to a bathroom; (4) the physical comfort or discomfort of the accused; (5) the mental and physical condition of the accused; and (6) the nature and extent of any promises or threats made to the accused. *See Fulminante*, 499 U.S. at 286; *Nenno v. State,* 970 S.W.2d 549, 557 (Tex.Crim.App. 1998), *overruled on other grounds, State v. Terrazas,* 4 S.W.3d 720, 727 (Tex.Crim.App. 1999).

The police interview of Appellant was conducted by Detectives Slaughter and Angel on March 12, 2005, shortly after Appellant's arrest. The interview was conducted at the San Antonio Police Department and lasted just less than three and a half hours. The entire interview was recorded and a DVD of that interview was introduced into evidence. In addition to the recording of the interview itself, at the hearing on Appellant's motion to suppress, the trial court was provided with the testimony of Detectives Slaughter and

Angel. At the conclusion of that hearing, the trial court found that (1) the confession was freely and voluntarily made; (2) Appellant had not been subjected to any coercion or mistreatment; (3) no promises or threats were made to Appellant; and (4) the confession was admissible under both the United States Constitution and the Texas Constitution, as well as articles 38.22 and 38.23 of the Code of Criminal Procedure.

In reviewing the propriety of the trial court's decision, we have considered the various factors set forth hereinabove. Nothing about the physical location of the interview, its length or the number of persons present during the interview suggests that it was a coercive setting. Secondly, Appellant never requested an attorney, although he was aware of his right to a lawyer when he made an outside call to a friend and suggested that the friend "get a lawyer." He was not denied any essential needs and was, in fact, provided with food and drink during the interview. He was not handcuffed during the interview and was able to get up and walk around. Nothing in the recorded interview or the testimony available to the trial court suggests that Appellant was mentally or physically unable to exercise his own free will. Finally, no promises were made to the him and the only "threats" made amounted to informing the him of what charges he potentially faced. Based upon the totality of the circumstances, we find that the trial court did not abuse its discretion in finding that his confession was admissible. Appellant's first point of error is overruled.

## Appellant's Statements to the Media

After Appellant had given his statement to the police and while he was being transported to a police vehicle, he was confronted by the media and asked whether he had killed Ashley Dergstrom. His affirmative response was introduced into evidence. By his third point of error, he contends the trial court erred by failing to suppress this statement because it was "fruit of the poisonous tree," tainted by his involuntary confession. As previously stated, Appellant's initial confession was not involuntary; therefore, this statement could not have been rendered inadmissible by the circumstances of that confession. Appellant does not raise, and we do not decide, whether the statement itself was involuntary based upon the facts and circumstances surrounding the making of that statement; nor do we decide whether this was a statement made as the result of a custodial interrogation. Appellant's third point of error is overruled.

## Recorded Telephone Conversations

By his fourth point of error, Appellant contends the trial court erred by overruling his objection to that portion of the recorded interview in which he was allowed to make two telephone calls. Specifically, he contends the recording of his side of the conversation constitutes an interception of a wire communication in violation of § 16.02 of the Penal Code. *See* Tex. Pen. Code Ann. § 16.02 (Vernon Supp. 2006). Appellant contends the statements are, therefore, inadmissible pursuant to § 2(a)(1) of article 18.20 of the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 18.20, § 2(a)(1) (Vernon

Supp. 2006). At the outset, we must draw a distinction between "wire communications" and "oral communications," and we must attribute to those terms the meaning given in article 18.20. In that article, a "wire communication" is defined as "an aural transfer made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception . . . . " *Id.* at § 1(1). That same article defines an "oral communication" as a "communication uttered by a person exhibiting an expectation that the communication is not subject to interception *under circumstances justifying that expectation.*" *Id.* at § 1(2) (emphasis added). Although Appellant's statements were being transferred to a third-party via a "wire communication," that communication was not being offered into evidence. Because the evidence offered was merely a recording of Appellant's side of the conversation it was not a "wire communication" and the trial court was required only to determine whether that communication was made with a reasonable expectation of privacy.

The evidence showed there were signs in the area of the interrogation room that informed Appellant he was being videotaped. Although Detective Slaughter could not say for certain whether Appellant was advised or aware of those signs, Appellant did admit on the videotape itself that he was aware that he was subject to being recorded. That fact alone defeats Appellant's contention that his statements were made with an expectation that they were not subject to interception. Furthermore, the circumstances here are comparable to a statement made by a defendant while in a jail cell, a scenario in which the

9

Supreme Court has said that there is no expectation of privacy. *See Hudson v. Palmer,* 468 U.S. 517, 525-26 (1984). Therefore, without deciding whether the recording of Appellant's side of a telephone conversation constitutes an "interception" of that communication for purposes of § 16.02 of the Penal Code, we conclude the communication itself was not made under circumstances that justify an expectation that the communication would not be intercepted and is, therefore, not an "oral communication" within that statutory definition. *See State v. Scheineman*, 77 S.W.3d 810, 813 (Tex.Crim.App. 2002). Appellant's fourth point of error is overruled.

## Gang Affiliation

By his fifth and final point of error, Appellant contends the trial court erred by admitting evidence of his gang affiliation because the State did not provide the jury with evidence concerning the reputation and character of the gang. We disagree.

A trial court's decision to admit or exclude evidence is reviewed under an abuse of discretion standard. *McDonald v. State,* 179 S.W.3d 571, 576 (Tex.Crim.App. 2005). It has been determined that evidence of gang affiliation may be relevant and admissible at the punishment phase of a trial for its bearing on the character of the accused. *Anderson v. State,* 901 S.W.2d 946, 950 (Tex.Crim.App. 1995). Evidence of gang affiliation alone is, however, meaningless to a jury which has no knowledge of the gang's purpose or activities. Without this additional information, the jury would be asked to speculate whether membership in that particular gang reflects positively or negatively upon the character of the

10

accused.  Therefore, evidence of gang affiliation is relevant and admissible to show the character of the accused, if evidence of the gang's activities is also presented.  *Id.; Beasley v. State,* 902 S.W.2d 452, 457 (Tex.Crim.App. 1995).

Appellant testified during the punishment phase of the trial.  On cross-examination the State asked him several questions relating to his gang affiliation.  At that time Appellant's trial counsel neither objected to any of the State's questions, nor asked the trial court to instruct the jury to disregard any of the evidence presented pertaining to gang affiliation.  Appellant contends his objection was not waived because he had obtained a "running objection" to evidence of gang affiliation prior to trial.  Without addressing the issue of preservation of error, a review of the record reveals Appellant's original contention is without merit.  His own testimony provided proof of his association with a gang, to-wit: the "Bloods," and his testimony further shed at least some light on the purposes and activities of the gang.  Therefore, we find the trial court did not abuse its discretion by permitting this evidence to be received by the jury.  Finding no error, point of error five is overruled.

Appellant's points of error having been waived or overruled seriatim, the judgment of the trial court is affirmed.

Patrick A. Pirtle
Justice

Publish.

11