In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
NO. 09-11-00444-CR

**TERRI LEANN JONES DRONET, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th Judicial District Court**
**Liberty County, Texas**
**Trial Cause No. CR26673**

## MEMORANDUM OPINION

Under a plea agreement to cap punishment at twenty years, Terri Leann Jones Dronet pleaded guilty to the murder of her husband, Robert Dronet. The trial court followed the provisions of the plea agreement and sentenced her to twenty years in prison. Dronet raises issues concerning the deportation admonishment, the trial court's denial of the motion to suppress, and alleged constitutional violations. Because Dronet pleaded guilty under a plea bargain, however, she can only appeal rulings on pretrial motions and matters on which the trial court gave her permission

to appeal. *See* Tex. R. App. P. 25.2(a)(2); *see also Kennedy v. State*, 297 S.W.3d 338, 340-42 (Tex. Crim. App. 2009); *Shankle v. State*, 119 S.W.3d 808, 812-13 (Tex. Crim. App. 2003)). We conclude that our jurisdiction has not been invoked regarding the admonishment issue; that the trial court did not err in denying the motion to suppress; that Dronet's statement to law enforcement was voluntary; and that she did not invoke her right to counsel during the interview with police. We affirm the judgment.

## DEPORTATION ADMONISHMENT

Dronet argues the trial court erred in failing to give her the required deportation admonishment during the guilty plea hearing. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (West Supp. 2012). We cannot address the argument because the trial court did not give Dronet permission to appeal this issue. Our jurisdiction has not been properly invoked to address the deportation admonishment. *See* Tex. R. App. P. 25.2(a)(2)(B).

## THE INTERVIEWS

Stating she shot her husband, Terri Dronet placed a 911 call. Officers came to the residence. Robert Dronet was dead. Terri Dronet was read her *Miranda* rights at the scene. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1996).

2

At the request of one of the officers responding to the call, Terri Dronet went to the Liberty County Sheriff's Office the night of the shooting to give a statement. During that interview, she maintained that her husband threatened her with a gun, and she shot him in self-defense.

The next day the officer called Dronet and asked if she would come in for another interview. Dronet agreed to do the second interview and arrived at the Liberty County Sheriff's Office within thirty minutes of the phone call. As he did with the first interview, the officer told Dronet that she was not in custody, not under arrest, and could leave at any time. He advised her orally and in writing of her *Miranda* rights. She acknowledged that she understood the warnings; she agreed to waive any rights and speak with him. He conducted both interviews in the interview room at the sheriff's office. A female law enforcement official was present in the room during each interview.

The interviewing officer told Dronet that an effort was being made to see if her story was corroborated by evidence obtained by law enforcement at the scene. He also explained that an autopsy had been performed, and the direction of the bullets was now known. Dronet continued to maintain that Robert had threatened to shoot her and pointed his gun at her, and it was then that she shot him.

Approximately forty-seven minutes into the interview, the following exchange occurred:

Dronet:    Do I need to get a lawyer?
Officer:   Do what now?
Dronet:    Do I need to get a lawyer?
Officer:   Well, that's going to be, that's going to be your, that's going to be your choice.

No further mention of a lawyer was made.

After about fifty minutes, Dronet left the interview room to take a break. After approximately seven minutes, the interview resumed. Dronet then reiterated that Robert had told her he was going to kill her. But she also stated that Robert did not have a gun that night. She testified that after she shot him, she retrieved a gun from a box and put the gun in his hand. At the conclusion of the interview, Dronet left the sheriff's office. She was arrested the next day.

MOTION TO SUPPRESS

Dronet's attorney filed a motion to suppress, and stipulated during the motion-to-suppress hearing that the motion only challenged Dronet's statements during the second interview. An appellate court reviews a trial court's denial of a motion to suppress under a bifurcated standard. *Abney v. State*, 394 S.W.3d 542, 547 (Tex. Crim. App. 2013). We give almost total deference to the trial court's determination of the historical facts that the record supports, and we review de

4

novo the trial court's application of the law to facts that do not turn on credibility and demeanor. *Id*. When the trial court makes findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *Id*. at 548. We review the court's legal ruling de novo unless the court's explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*.

During the second motion-to-suppress hearing, Dronet recounted that she met the officer in 2002 and began talking with him when she started working at the high school. He would come to the school to show "the law support of anti[-]drugs." She testified she sometimes stopped off at his office. She explained that the relationship progressed to sexual encounters, which ended when a hurricane went through the area and the two were preoccupied with repairs and other priorities. She indicated they crossed paths at times after that, but the sexual encounters had stopped.

As a result of this relationship, Dronet felt that she and the officer were good friends. And she explained that, once a person has a physical relationship, "you trust them in a way." She testified she went to the sheriff's office for the first interview with the officer, because he was the "captain," "but he was my friend first." "He was my friend before, during." "I had no reason to feel like he . . .

would do anything that wasn't supposed to be done." Dronet acknowledged she had no photographs, no letters, no cards, and no videos to support her claim of a sexual relationship. Dronet stated she kept their relationship private.

Dronet also testified that during the second interview, the officer's demeanor changed. He essentially informed her at one point that her account of the events did not match up with the observations and forensics from the crime scene. Dronet testified she believed he would have told her if she needed an attorney or not, and she had no reason to question that belief because she still considered him her friend and confidant.

The offier testified at the motion-to-suppress hearing. He stated Dronet was not in custody at the time of the second interview; her freedom was not restrained in any way; and she was not under arrest. He indicated he told her she could leave if she wanted to. Although he explained he knew Dronet prior to the murder, he testified he never had a sexual relationship with her, and he never hugged or kissed her. He acknowledged he had cell phone conversations with her, and he talked to her in person. He explained that she was one of more than 300 cell phone contacts.

The officer described his interview technique as being sympathetic, friendly, and receptive towards the person he was interviewing. He explained that, through use of this technique, he encourages the person to talk to him, to trust him---so that

6

he or she will tell the truth. He indicated his technique could be described as a low-key friendly style.

## VOLUNTARINESS

Dronet raised voluntariness and invocation-of-right-to-counsel issues in her motion to suppress. Rule 25.2(a), as well as the trial court's certification of her right to appeal, permits her appeal of these issues. *See* Tex. R. App. P. 25.2(a). Dronet argues that the interviewing officer "improperly utilized a position of trust, as well as of intimacy with [her]," "improperly interrogated" her, and obtained an involuntary confession. Dronet asserts that due process requires that an officer who has a personal and sexual relationship with an accused should never be the officer who interrogates the suspect. Essentially, her argument is that the alleged relationship she had with the officer rendered her statement involuntary.

At the suppression hearing, counsel stipulated the interviews were non-custodial. The trial court made the following findings of fact:

20. At the May 30, 2013 hearing, Defendant testified that she and [the officer] had a sexual relationship.
21. At the May 30, 2013 hearing, [the officer] testified that he and Defendant never had a sexual relationship.
22. The Defendant presented no evidence other than her testimony that a sexual relationship existed between her and [the officer], no photographs, no videos, no correspondence of any kind.
23. The Court finds that Defendant's testimony is not credible.
24. The Court finds that Defendant and [the officer] did not have a past sexual relationship.

7

25. At the May 30, 2013 hearing, Defendant stipulated that she was not in custody during her May 29, 2007 and May 30, 2007 taped interviews.

. . . .

28. The conditions under which Defendant made the statements were voluntary in nature.

The record supports the trial court's findings.

A defendant's statement may be used in evidence against her if it "was freely and voluntarily made without compulsion or persuasion, under the rules hereinafter prescribed [in the Code of Criminal Procedure]." Tex. Code Crim. Proc. Ann. art. 38.21 (West 2005). Under article 38.22, a statement even in a non-custodial interview may under certain circumstances be involuntary. *See Oursbourn v. State*, 259 S.W.3d 159, 171-73 (Tex. Crim. App. 2008); *see also* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005). And, in the absence of custody, due process may be violated by admitting confessions that are not voluntarily given. *See Wolfe v. State*, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996); *Woodruff v. State*, 330 S.W.3d 709, 731-32 (Tex. App.—Texarkana 2010, pet. ref'd).

The determination of whether a defendant's statement is voluntary is an "application of law to a fact question." *Garcia v. State*, 15 S.W.3d 533, 535 (Tex. Crim. App. 2000). When the defendant presents evidence that raises a voluntariness question, the State must controvert that evidence and prove

voluntariness by a preponderance of the evidence. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex. Crim. App. 1999). A defendant's statement may be involuntary for federal due process purposes "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker." *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim. App. 1995).

The ultimate question in determining voluntariness is whether the accused's "'will was overborne' by the circumstances surrounding the giving of a confession." *See Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)); *Creager v. State*, 952 S.W.2d 852, 856 (Tex. Crim. App. 1997). We must consider the "totality of the circumstances[.]" *See Moseley v. State*, 223 S.W.3d 593, 597 (Tex. App.—Amarillo 2007), *aff'd*, 252 S.W.3d 398 (Tex. Crim. App. 2008).

The second interview was conducted in the interview room at the Liberty County Sheriff's Office. Dronet went there voluntarily for the interview. She was not under arrest, not in handcuffs, and not restrained in any other way. She was free to leave the room at any time or to terminate the interview. There is nothing in the record suggesting that the physical location of the interview, its length or the

9

number of persons present during the interview amounted to a coercive setting. The officer read Dronet her *Miranda* rights (including the right to an attorney), and Dronet also signed written *Miranda* warnings. Dronet asked the officer during the interview if she needed an attorney, and he told her it was her choice. Neither she nor he mentioned an attorney again. She was not denied any essential needs during the interview; she took a short break, left the room, and then returned to the interview.

The record does not show the interview technique was a coercive one or that the technique resulted in an overbearing of Dronet's will. The officer testified the technique was designed to encourage a suspect to tell the truth. He made no promises to Dronet and did not threaten her. Dronet's testimony did not change until the officer told her the forensics and evidence did not support her claims. The trial court found there was no sexual relationship between Dronet and the officer. We give almost complete deference to the trial court's findings of fact. When the evidence is viewed in the light most favorable to the trial court's ruling, the record supports the trial court's conclusion that Dronet's will was not overborne and her statement was voluntary. We overrule issue two.

INVOCATION OF RIGHT TO COUNSEL

In her supplemental brief, Dronet argues the trial court erred in denying her motion to suppress and in admitting the last thirteen minutes of her second interview. She contends she invoked her right to counsel, and yet the interview continued. At approximately forty-seven minutes into the interview, Dronet asked, "Do I need to get a lawyer?" The officer responded, "Well, . . . that's going to be your choice." Dronet did not ask for an attorney at that point. She did not mention an attorney for the rest of the interview. Neither did the officer. Further, she testified at the suppression hearing, that when she asked the officer if she needed a lawyer, she was asking for his opinion; she stated she was not requesting a lawyer.

The Fifth Amendment prohibits the government from compelling a criminal suspect to bear witness against herself. *Pecina v. State*, 361 S.W.3d 68, 74-75 (Tex. Crim. App.), *cert. denied*, 133 S.Ct. 256 (2012) (citing U.S. Const. amend V). Only if the suspect voluntarily and intelligently waives her *Miranda* rights, including the right to have an attorney present during questioning, may her statement be introduced into evidence against her at trial. *Id*. at 75. Under *Davis v. United States*, "[i]nvocation of the *Miranda* right to counsel, 'requires at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney.'" *Davis v. United States*, 512 U.S. 452,

11

459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991)). The Supreme Court repeated this principle in *Berghuis v. Thompkins*, 560 U.S. 370, 130 S.Ct. 2250, 2259-60, 176 L.Ed.2d 1098 (2010). The suspect must "'unambiguously'" request counsel. *Id.* (quoting *Davis*, 512 U.S. at 459). "If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation. . . or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Id.*, 130 S.Ct. at 2259 (quoting *Davis*, 512 U.S. at 461-62). Dronet did not unequivocally assert her right to counsel. We overrule her issues. We affirm the trial court's judgment.

     AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on February 19, 2013
Opinion Delivered August 28, 2013
Do Not Publish

Before Gaultney, Kreger, and Horton, JJ.