**FILED**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI - EDINBURG

**06/30/15**

**CECILE FOY GSANGER, CLERK**
**BY Delia S. Rodriguez**

ACCEPTED
13-14-00452-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
7/1/2015 10:32:29 AM
CECILE FOY GSANGER
CLERK

**Cause No. 13-14-00452-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT
AT CORPUS CHRISTI-EDINBURG, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
7/1/2015 10:32:29 AM
CECILE FOY GSANGER
Clerk

-------------------------------------------------------------------

**JOSE ISAAC REYES, APPELLANT**

v.

**THE STATE OF TEXAS, APPELLEE**

-------------------------------------------------------------------

APPEAL OF JUDGMENT IN CAUSE NO. CR-0932-02-H
FROM THE 389TH JUDICIAL DISTRICT COURT
OF HIDALGO COUNTY, TEXAS
THE HONORABLE JUDGE LETTY LOPEZ, PRESIDING

-------------------------------------------------------------------

**FIRST AMENDED BRIEF OF THE STATE OF TEXAS/APPELLEE**

-------------------------------------------------------------------

RICARDO RODRIGUEZ, JR.
Criminal District Attorney
Hidalgo County, Texas

LUIS A. GONZALEZ, ASSISTANT
Criminal District Attorney
Hidalgo County, Texas

HIDALGO COUNTY COURTHOUSE
Edinburg, TX 78539
Telephone #: (956) 318-2300, ext. 8133
Facsimile #: (956) 380-0407
luis.gonzalez@da.co.hidalgo.tx.us
State Bar No. 24083088

ATTORNEYS FOR APPELLEE

ORAL ARGUMENT WAIVED

i

## IDENTIFICATION OF PARTIES AND COUNSEL

APPELLEE certifies that the following is a complete list of the parties, attorneys, and all other interested persons regarding this matter:

APPELLANT in this case is JOSE ISAAC REYES.

APPELLANT was represented in the trial court by Rogelio Garza, 310 W. University Dr., Edinburg, TX, 78539; and Daniel Reyes, 4106 N. 22nd St., McAllen, TX, 78504.

APPELLANT is represented on appeal by Mark A. Alexander and Pamela S. Alexander, 4009 S. Sugar Rd., Edinburg, TX 78539.

APPELLEE is the State of Texas, by and through RICARDO RODRIGUEZ JR., Criminal District Attorney, Hidalgo County, TX.

APPELLEE was represented in the trial court by RENE GUERRA, Criminal District Attorney in and for Hidalgo County, Texas, 100 N. Closner, 3rd floor, Edinburg TX 78539, by his Assistant Criminal District JUAN VILLESCAS.

APPELLEE is represented on appeal by RICARDO RODRIGUEZ JR.[1], Criminal District Attorney in and for Hidalgo County, Texas, 100 N. Closner, 3rd floor, Edinburg TX 78539, by his Assistant Criminal District Attorney, LUIS A. GONZALEZ.

---

[1] This appeal arose when former District Attorney Rene Guerra held office. As of January 1st, 2015, Ricardo Rodriguez Jr. is now the active district attorney for Hidalgo County.

# NOTES AS TO THE FORM OF CITATION

A.) Citation to the Clerk's Record will be to page number, *e.g.* CR 47 refers to Page 47 of the Clerk's Record.

B.) Citation to testimony in the Reporter's Record will be to volume and page numbers, *e.g.* '3 RR 56' refers to page 56 of volume 3 of the Reporter's Record.

C.) Citation to the State's Exhibits will be to exhibit number, *e.g.* SX 39 refers to State's Exhibit number 39, found in the 'exhibits' volume within the Reporter's Record.

D.) Reference to the Brief of Appellant will be to page number, *e.g.* Brief of Appellant, p. 9.

## NOTE AS TO ORAL ARGUMENT

The State of Texas respectfully submits that oral argument in the instant case would not serve to enlighten the Court further or illuminate the issues in that, because the facts and legal arguments are adequately presented in the briefs and record, the decisional process of the Court would not be significantly aided by oral argument.  The State of Texas, therefore, respectfully submits that oral argument in this case is not necessary, and therefore waives oral argument.

Nonetheless, the State of Texas reserves the right to present oral argument should the Court grant oral argument.

# TABLE OF CONTENTS

Title Page ....................................................................................................................i

Identification of Parties and Counsel.......................................................................... ii

Note as to the Form of Citation.................................................................................. iii

Note as to Oral Argument ...........................................................................................iv

Table of Contents .........................................................................................................v

Index of Authorities ................................................................................................. vii

Statement of the Case................................................................................................ xii

Issues Presented ...................................................................................................... xiii

Statement of Facts.....................................................................................................xiv

Summary of Argument ..............................................................................................xxv

Argument and Authorities............................................................................................1

Counterpoint One (In Response to Issue No. One):

*The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Rosa Angelica Arellano Lopez* ..........................1

Counterpoint Two (In Response to Issue No. Two):

*Appellant's claim that the trial court erred when it did not include various instructions in the jury charge is without merit* ...............................11

Counterpoint Three (In Response to Issue No. Three):

*The trial court did not commit reversible error when it admitted Appellant's statement into evidence* .............................................................21

Counterpoint Four (In Response to Issue No. Four):

*The trial court did not commit reversible error when it admitted physical and blood evidence seized from the Appellant* ..................................26

Counterpoint Five (In Response to Issue No. Five):

*Appellant failed to preserve error and thus waived his complaint on appeal that the trial court committed reversible error when it allowed the State to make improper closing arguments* ...............................................35

Prayer ........................................................................................................37

Certificate of Compliance ........................................................................38

Certificate of Service ...............................................................................38

# INDEX OF AUTHORITIES

## U.S. Supreme Court Cases

*Arizona v. Hicks*, 480 U.S. 321(1987) ...................................................................29

*Harris v. United States*, 390 U.S. 234 (1968)......................................................28

*Horton v. California*, 496 U.S. 128 (1990)...........................................................29

*Jackson v. Virginia*, 443 U.S. 307 (1979) ..............................................................1

*Katz v. United States*, 389 U.S. 347 (1967) .........................................................28

*McDonald v. United States*, 335 U.S. 451 (1948) ................................................28

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)................................................14

*Texas v. Brown*, 460 U.S. 730 (1983) ......................................................... 28-29, 34

*United States v. Karo*, 468 U.S. 705 (1984) ........................................................28


## Texas Court of Criminal Appeals Cases

*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985)............................11, 18

*Beardsley v. State*, 738 S.W.2d 681 (Tex. Crim. App. 1987)..................................5

*Briggs v. State*, 789 S.W.2d 918 (Tex. Crim. App. 1990)......................................22

*Burden v. State*, 55 S.W.3d 608 (Tex. Crim. App. 2001)......................................26

*Butler v. State*, 872 S.W.2d 227 (Tex. Crim. App. 1994)............................... 22-24

*Carmouche v. State*, 10 S.W.3d 323 (Tex. Crim. App. 2000)..................... 27, 33-34

*Clark v. State*, 548 S.W.2d 888 (Tex. Crim. App. 1977) ......................................28

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007)......................................3

*Cockrell v. State*, 933 S.W.2d 73 (Tex. Crim. App. 1996)......................................35

*Cruz v. State*, 225 S.W.3d 546 (Tex. Crim. App. 2007)..........................................35

*De La Paz v. State*, 279 S.W.3d 336 (Tex. Crim. App. 2009)...................... 27, 33-34

*Dewberry v. State*, 4 S.W.3d 735 (Tex. Crim. App. 1999)........................................3

*Gallo v. State*, 239 S.W.3d 757 (Tex. Crim. App. 2007) .........................................26

*Garcia v. State*, 919 S.W.2d 370 (Tex. Crim. App. 1994) ........................................2

*Goff v. State*, 931 S.W.2d 537 (Tex. Crim. App. 1995).......................................... 6

*Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997) .......................................27

*Haley v. State*, 811 S.W.2d 600 (Tex. Crim. App. 1992).........................................29

*Heidelberg v. State*, 144 S.W.3d 535 (Tex. Crim. App. 2004) .................. 22- 24, 31

*Johnson v. State*, 967 S.W.2d 410 (Tex. Crim. App. 1998) ......................................2

*Ladd v. State*, 3 S.W.3d 547 (Tex. Crim. App. 1999) ..............................................36

*Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997) ..........................................3

*Marable v. State*, 85 S.W.3d 287 (Tex. Crim. App. 2002) ...................................... 6

*Mathis v. State*, 67 S.W.3d 918 (Tex. Crim. App. 2002) .........................................36

*Osbourn v. State*, 92 S.W.3d 53 (Tex. Crim. App. 2002)..................................21, 25

*Oursbourn v. State*, 259 S.W.3d 159 (Tex. Crim. App. 2008) .......................... 13-18

*Powell v. State*, 63 S.W.3d 435 (Tex. Crim. App. 2001) .........................................27

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006).......................................5-6

*Ransom v. State*, 920 S.W.2d 288 (Tex. Crim. App. 1994)........................................5

*Rocha v. State*, 16 S.W.3d 1 (Tex. Crim. App. 2000) ...............................................17

*Rodgers v. State*, 549 S.W.2d 726 (Tex. Crim. App. 2007) ........................... 15 fn. 8

*Russeau v. State*, 291 S.W.3d 426 (Tex. Crim. App. 2009) ....................................21

*Solomon v. State*, 49 S.W.3d 356 (Tex. Crim. App. 2001)......................................12

*Sorto v. State*, 173 S.W.3d 469 (Tex. Crim. App. 2005) ............................................. 6

*Taylor v. State*, 268 S.W.3d 571 (Tex. Crim. App. 2008)........................................26

*Thomas v. State*, 408 S.W.3d 877 (Tex. Crim. App. 2013).......................... 17 fn. 17

*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004)..................................35

*Torres v. State*, 71 S.W.3d 758 (Tex. Crim. App. 2002).........................................26

*Valtierra v. State*, 310 S.W.3d 442 (Tex. Crim. App. 2010)...................................22

*Walter v. State*, 28 S.W.3d 538 (Tex. Crim. App. 2000)............................. 28-29, 34

*Winfrey v. State*, 323 S.W.3d 875 (Tex. Crim. App. 2010)..................................1, 10

## Texas Courts of Appeals Cases

*Cardona v. State*, 973 S.W.2d 412 (Tex. App.—
    Austin 1998) ................................................................................ 16-17

*Escobar v. State*, 28 S.W.3d 767 (Tex. App.—
    Corpus Christi 2000, pet. ref'd)..........................................................5

*Gutierrez v. State*, 327 S.W.3d 257 (Tex. App.—
    San Antonio 2010, no pet.)................................................................21

*Hargrove v. State*, 211 S.W.3d 379 (Tex. App.—
    San Antonio 2006, pet. ref'd)................................................... 7 fn. 7

*Jaynes v. State*, 216 S.W.3d 839 (Tex. App.—
      Corpus Christi 2006, no pet.)......................................................................22, 30

*Morrison v. State*, 71 S.W.3d 821 (Tex. App.—
      Corpus Christi 2002, no pet.)..............................................................................27

*Moseley v. State*, 223 S.W.3d 593 (Tex. App.—
      Amarillo 2007), *affirmed*, 252 S.W.3d 398 (Tex. Crim. App. 2008)............21

*Ozuna v. State*, 199 S.W.3d 601 (Tex. App.—
      Corpus Christi 2006, no pet.)................................................................................3

*Rodriguez v. State*, 2008 Tex. App. LEXIS 7631 (Tex. App.—
      Corpus Christi 2008)(not designated for publication)............................ 7 fn. 7

*State v. Subke*, 918 S.W.2d 11 (Tex. App.—
      Dallas 1993).........................................................................................................24

*Wheaton v. State*, 129 S.W.3d 267 (Tex. App.—
      Corpus Christi 2004, no pet.)................................................................................2

*Zayas v. State*, 972 S.W.2d 779 (Tex. App.—
      Corpus Christi 1998, pet. ref'd.) ........................................................................28

**Statutes and Constitutional Provisions**

TEX. CODE CRIM. PROC. art. 18.06 (Vernon 2001) ....................................................30

TEX. CODE CRIM. PROC. art. 18.07 (Vernon 2001) ....................................................30

TEX. CODE CRIM. PROC. art. 38.22 (Vernon 2001) ...................................... 13, 22-25

TEX. CODE CRIM. PROC. art. 38.23(a) (Vernon 2001)...............................................28

TEX. CONST. art. I, § 9..................................................................................................27

TEX. PENAL CODE § 6.03(a) (Vernon 2001) ................................................................4

TEX. PENAL CODE § 6.03(b) (Vernon 2001) ................................................................4

TEX. PENAL CODE § 7.01(a) (Vernon 2001)....................................................................5

TEX. PENAL CODE § 7.01(b) (Vernon 2001) ...............................................................5

TEX. PENAL CODE § 7.02(a)(2) (Vernon 2001)......................................................5, 10

TEX. PENAL CODE § 7.02(b) (Vernon 2001) .........................................................10, 12

TEX. PENAL CODE § 19.02(b)(1) (Vernon 2001) .........................................................4

TEX. PENAL CODE § 19.03(a)(2) (Vernon 2001) .........................................................3

TEX. PENAL CODE § 29.02(a) (Vernon 2001)...............................................................4

TEX. PENAL CODE § 31.03(a) (Vernon 2001) ..............................................................4

TEX. PENAL CODE § 31.03(b) (Vernon 2001) .............................................................4

TEX. R. APP. P. 33.1(a) ...................................................................... 22, 30-31

TEX. R. APP. P. 38.1(i)..............................................................................12, 14

U.S. CONST. amend. IV ..............................................................................27

## STATEMENT OF THE CASE

Appellant was charged by indictment in cause number CR-0932-02-H for one count of Capital Murder. (CR 2).

On April 16, 2003, the jury found the Appellant guilty of Capital Murder. (CR 510-14).

On April 16, 2003, the trial court imposed upon the Appellant a sentence of confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of life. (CR 510-12).

On May 21 and June 11, 2003, attorney Charles Banker III filed untimely notices of appeal on Appellant's behalf. (CR 517-18, 520). On August 7, 2003, the Thirteenth Court of Appeals dismissed the appeal for want of jurisdiction.

On April 29, 2013, Appellant filed an application for a writ of habeas corpus seeking an out-of-time-appeal, under Article 11.07 of the Texas Code of Criminal Procedure. On June 11, 2014, the Texas Court of Criminal Appeals granted Appellant an out-of-time-appeal. *See* TCCA opinion, *Ex Parte Jose Isaac Reyes*, No. WR-65,848-06. On August 11, 2014, Appellant timely filed a notice of appeal within the parameters of the order by the Texas Court of Criminal Appeals.

The Appellant is now before this Court by way of five points of error.

# ISSUES PRESENTED

Counterpoint One (In Response to Issue No. One):

*The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Rose Angelica Arellano Lopez.*

Counterpoint Two (In Response to Issue No. Two):

*Appellant's claim that the trial court erred when it did not include various instructions in the jury charge is without merit.*

Counterpoint Three (In Response to Issue No. Three):

*The trial court did not commit reversible error when it admitted Appellant's statement into evidence.*

Counterpoint Four (In Response to Issue No. Four):

*The trial court did not commit reversible error when it admitted physical and blood evidence seized from the Appellant.*

Counterpoint Five (In Response to Issue No. Five):

*Appellant failed to preserve error and thus waived his complaint on appeal that the trial court committed reversible error when it allowed the State to make improper closing arguments*

## STATEMENT OF FACTS

### Facts Pertinent to Counterpoint One (In Response to Issue No. One)

On January 31, 2002, at noon, David Gonzalez drove into the parking lot of the West Point Convenient Store in Mission, TX. (5 RR 26, 37). He had wanted to buy a soda before heading to work. (5 RR 26). Once parked, David noticed only one other vehicle in the parking lot. (5 RR 31-32). As he was walking to the entrance, two men walked out of the store to the other vehicle and left. (5 RR 32). Once inside, David noticed that the store was quiet and the lights were off. (5 RR 34). He saw a beer can, in a bag, lying on its side on top of the checkout counter. (5 RR 32). David walked around inside the store, calling out "hello," but no one answered. (5 RR 33). Past the checkout counter was a room without a door. (5 RR 34). When David glanced over the counter, he saw the victim lying on the bloody floor.[2] (5 RR 34). David exited the store and called 911. (5 RR 34).

Deputy Randy Reyna of the Hidalgo County Sheriff's Office arrived within five minutes at the convenient store, responding to a possible robbery-homicide. (6 RR 80). Upon arrival, Deputy Reyna was approached by David Gonzalez, who told him about the victim. (6 RR 81). Deputy Reyna told David to stay outside, while Reyna went inside to check the status of the victim. (6 RR 81). Once inside, Reyna drew his weapon. He noticed a blood trail on the floor, leading into a

---

[2] The victim was later identified as Rosa Angelica Arellano Lopez. Evidence Tech Sandra Rangel had found a purse at the crime scene containing the victim's ID. (5 RR 89).

backroom behind the cash register, and observed the victim on the ground. (6 RR 82). The victim was lying on her stomach, face down, her feet towards the west and her head towards the east. (6 RR 84). Reyna saw bloody footprints with a "v" pattern and carefully avoided stepping on the blood. (6 RR 83, 110). He called out to the victim, "Ma'am," but received no response. (6 RR 83). Reyna checked the victim's neck for a pulse and discovered she did not have one. (6 RR 83-84). He went back outside and advised dispatch of the dead body. (6 RR 83).

Deputy Maricela Mena arrived shortly thereafter. (5 RR 92). After she secured the crime scene with tape, Mena and Reyna searched the ground floor and second floor of the store, but found nobody. (5 RR 97). The victim's body had several stab wounds through her back and chest area, and on the temple. (6 RR 87). The store did not appear ransacked. (6 RR 88). Meanwhile, David Gonzalez had given police a description of the two males he had come across before walking inside the store. (5 RR 47). David described two males, wearing dark clothing, one wearing a cap; they left the store in a beige-colored Ford Escort or Taurus. (5 RR 47). Around 12:30 pm, Deputy George Luis Lopez heard dispatch give a description of the two suspects and their vehicle as he was driving eastbound on the intersection of 5 Mile and La Homa Road. (6 RR 10). Lopez observed a goldish-beige colored Ford Taurus drive southbound on La Homa Road. (6 RR 10). The Ford Taurus pulled into the parking lot of the Lucky Seven gas station.

(6 RR 12). As Lopez approached the vehicle, one of the suspects, who was wearing a dark-colored shirt and cap, exited the Ford Taurus from the passenger side, and walked rapidly inside the Lucky Seven store; the driver, the Appellant in this case, remained inside the vehicle with the window down. (6 RR 13).

Deputy Lopez parked his marked patrol unit right behind the suspect vehicle at an angle. (6 RR 15). Lopez exited his vehicle, stood to the side, and advised Appellant to get out of his vehicle in English and Spanish three times. (6 RR 16). Appellant stayed inside, but was moving around and leaned over. (6 RR 16). Deputy Lopez drew his weapon. (6 RR 16). Appellant then opened the door and got off the vehicle. (6 RR 16). Appellant was wearing a blue shirt, blue jeans, and boots. (6 RR 18-19). Appellant's clothes appeared to be stained with blood. (6 RR 19). After Lopez placed Appellant inside his police unit, Deputy Martin Salazar arrived. (6 RR 21, 50). Salazar looked after Appellant while Lopez searched on foot inside the store and the immediate area for the passenger. (6 RR 21-22). The passenger could not be found. (6 RR 22). Appellant identified himself as Antonio Hernandez and was breathing hard and sweaty. (6 RR 23). Salazar read the Defendant his rights in Spanish. (6 RR 54).

Shortly after, Deputy Reyna drove David Gonzalez from the crime scene to the Lucky Seven. (6 RR 93). Gonzalez was in the backseat of Deputy Reyna's police unit, and remained inside when they arrived at the Lucky Seven. (5 RR 51).

Deputy Reyna had parked his police unit along the passenger side of the suspect vehicle, behind the other police unit. (6 RR 97-98). Appellant was taken out of the backseat, passenger side of the unit, close enough for David Gonzalez to see. (5 RR 52; 6 RR 102). Deputy Reyna informed the investigators of the bloody "v"-pattern footprints at the crime scene. (6 RR 110). Upon inspection, Deputy Reyna opined that the pattern of Appellant's shoes appeared to match that found at the crime scene.[3] (6 RR 110). Based on Appellant's clothing, height, and weight, David Gonzalez was able to identify Appellant as one the men he had seen walking out of the West Point Convenient Store when he had first arrived there. (5 RR 54-55). Gonzalez also told officers that the Appellant's vehicle looked similar to the one he had seen parked at the West Point Convenient Store. (5 RR 49).

A short time later, Deputy Lopez transported Appellant to the Hidalgo County Sheriff's Office. (9 RR 20). Appellant was placed in a "special operations room." (9 RR 20). In that room, Appellant's clothes were removed and confiscated, and Appellant was given a uniform provided by the Sheriff's Office. (9 RR 21-22). While Appellant had removed his clothes, Investigator Lara noticed a large, suspicious bulge in Appellant's crotch area; a plastic bag could be seen sticking out past the seams of the underwear. (9 RR 22-24). Lara asked Appellant

---

[3] Investigator Alfredo Lara confiscated Appellant's shoes to prevent contamination of any trace evidence shortly after he was transported to the Hidalgo County Sheriff's Office, discussed below. (9 RR 15).

to pull his underwear. (9 RR 22). A plastic bag containing $427.50 was found and confiscated.[4] (9 RR 22). Appellant was then placed inside the questioning room. (9 RR 20-21). Investigator Lara read Appellant his Miranda rights in Spanish. Appellant acknowledged he understood his rights by providing his signature and initials ("AH" for "Antonio Hernandez") on the Spanish Miranda warnings form, dated 1/31/2002, starting at 2:37 PM. (9 RR 26-30). Appellant agreed to give a statement and did not ask for an attorney or requested to stop at any point. (9 RR 31).

At some point during the statement, Investigator Lara was called out by his supervisor and told that Appellant's true and correct name was "Jose Isaac Reyes." (9 RR 9). Appellant addressed this in his statement, explaining that his real name was Jose Isaac Reyes and that he used the name "Antonio Hernandez" for work purposes.[5] (9 RR 43). Appellant and his brother Obed Reyes had been drinking when they had decided to go to the West Point Country Store. (9 RR 43).

> We got off the car and we went into the store. I went to get some beer. I got two quarts of beer, "Miller Lite." I turned around and my

---

[4]  At trial, witness Juan Carlos Martinez explained he ran the West Point Country Store at the time of the murder, and employed the victim as a clerk for a 7am to 3pm shift. (5 RR 67-68). Martinez would place $85 in one cash register every day. (5 RR 76). The West Point County Store also sold calling cards, generally selling $400 to $450 dollars worth each week. (5 RR 83). The money from the sales of these calling cards were kept in a plastic bag inside a plastic box. (5 RR 80-81). After the murder, Martinez never recovered the box or the money, but owed the vender around $450. (5 RR 81-82).

[5] At this point, Appellant began using the initials "IR" for his real name once that information was revealed to Investigator Lara and Lara confronted the Defendant about it. (9 RR 40).

twin brother "Obed" was on – was in the counter and that he had a knife. I saw that my brother was stabbing the clerk behind the counter.

My brother stabbed the lady several times. My brother told me "Come and help – help me."

I then went to help him. I held the lady in order for her not to move. My brother was still stabbing her. The lady fell to the floor. We then ran outside. I said – I saw that my brother had a lot of money in a plastic bag.

We got into the car and left…

(9 RR 43-44). Alejandro Madrigal, a Forensic Analyst with the Texas Department of Public Safety ('TXDPS') Crime Laboratory, DNA-tested various items confiscated from Appellant, as well as blood samples taken from the crime scene and the vehicle Appellant had been driving that day. (8 RR 85). The DNA profile from the blood stains on Appellant's jeans and shoes were consistent with the DNA profile of the victim. (8 RR 86). Blood in the lower driver's side dashboard area contained a DNA profile consistent with that of the victim. (8 RR 87). Jose Zuniga, a criminalist with the TXDPS Crime Laboratory, opined that the bloody right-foot print found at the crime scene matched the impression of Appellant's right shoe. (8 RR 110-111).

Dr. Fulgencio Salinas performed the autopsy on the victim on February 1, 2002. (9 RR 80). Dr. Salinas identified about 35 stab wounds caused by a single-edged blade or any other object that had the same characteristics of a single-edged

blade.[6] (9 RR 82). The majority of the stab wounds were on the victim's back. (9 RR 83). The victim faced her attacker at some point as indicated by the stab wounds on her front side. (9 RR 85). Dr. Salinas concluded that all together, the victim's injuries could have killed her, but some of the injuries, separately, could also have killed her. (9 RR 90).

**Facts Pertinent to Counterpoint Four (In Response to Issue No. Four)**

At the hearing on the motion to suppress, Hidalgo County Investigator Alfredo Lara was the sole witness presented by the State. Lara testified that January 31, 2002, he arrived at 5 Mile Line and La Homa about 1 PM in reference to a female stabbed several times. (3 RR 9-10). Eyewitnesses indicated a vehicle and the two subjects inside it had left the crime scene prior to arrival at a store. (3 RR 9). Deputies aired information over radio dispatch, based on witness accounts, that a tan, beige, or brown Ford Topaz or Ford Taurus type vehicle, 4-door, occupied by two Hispanic male suspects wearing blue jeans, blue shirt, and baseball cap. (3 RR 12-13). A deputy on patrol made a traffic stop on the vehicle that matched the description as well as the subjects in the vehicle. (3 RR 10). Once Lara arrived, the deputy had already detained an individual. (3 RR 11). When Lara made contact, he visually saw blood-stained clothing on the individual. (3 RR 11).

---

[6] Police offers made an effort to find a murder weapon but ultimately could not locate one. (8 RR 20-26; 9 RR 64).

Deputy George Lopez made initial contact with the suspect vehicle approximately 15 minutes after deputies arrived at the crime scene, at about 12:41 pm. (3 RR 15). The vehicle matched the description by dispatch, and was parked in front of a convenient store. (3 RR 17). There were two male occupants; one exited the vehicle and went inside the store, the other remained inside the vehicle. (3 RR 18). Deputy Lopez attempted to make contact with the individual inside the vehicle. (3 RR 18). Deputy Lopez parked his police unit behind the suspect vehicle. (3 RR 19). He ordered the individual, the driver, to exit the vehicle several times. (3 RR 19). Deputy Lopez saw the driver make some type of suspicious movements while inside the vehicle. (3 RR 19). Once the driver exited the vehicle, Deputy Lopez saw the driver's clothes to be blood-stained. Driver identified himself as Antonio Hernandez. (3 RR 20).

Deputy Lopez took custody of the driver, handcuffed him, and placed him inside his police unit. (3 RR 21). Other deputies eventually showed up to assist Deputy Lopez, however Deputy Salazar was the first to arrive. (3 RR 21). Later investigation revealed that the driver's actual name was Jose Isaac Reyes, the Appellant. (3 RR 22). Once Lara arrived, Appellant was inside the backseat of Lopez's police unit. (3 RR 22-23). By that point, Deputy Salazar had read him his rights. (3 RR 23). When he arrived, Lara was briefed that other deputies were trying to locate the other suspect. (3 RR 23). He was also informed that a witness

was en route that could identify the vehicle and/or the suspects. (3 RR 23). At that point, Salazar informed Appellant of his Miranda rights. (3 RR 23). Lara was present for the reading of Appellant's rights in Spanish. (3 RR 24).

Lara observed Appellant's blood-stained clothing, the front of the blue muscle shirt, the front of the blue-jean pants. (3 RR 24-25). Appellant had been nervous, sweaty, and acting scared. (3 RR 30). David Gonzalez, the witness who found the victim's dead body and reported it to the Hidalgo County Sheriff's Office ('HCSO'), arrived shortly after. (3 RR 25-26). Gonzalez remained inside the police unit, at a safe distance from the police unit in which Appellant had been placed, so he could identify the vehicle and suspect. (3 RR 26). Lara was informed immediately when Gonzalez positively identified Appellant as the suspect and the vehicle as the suspect vehicle that was at the store where the homicide occurred. (3 RR 26). At that time, Appellant had been outside the police unit and was already handcuffed. (3 RR 27). Lara felt they had probable cause to arrest Appellant, but Appellant was not formally informed. (3 RR 27). Lara based this on the Appellant's vehicle matching the description of the suspect vehicle leaving the crime scene, Appellant's blood-stained clothing, an eye witness identified the suspect vehicle and the suspect. (3 RR 27). Lara told Appellant he was being detained for further questioning. (3 RR 27). Appellant was then secured inside the police unit, and Appellant's vehicle was impounded. (3 RR 27).

Hidalgo County wrecker towed Appellant's vehicle to HCSO. (3 RR 28-29). Deputy Lopez followed the wrecker, transporting Appellant to HCSO, as Lara followed Deputy Lopez into the compound. (3 RR 29). Appellant was not booked, but taken to the Major Crimes room. (3 RR 30). Appellant's clothing was photographed and Appellant was moved him from the Major Crimes room to the questioning room. (3 RR 31). Lara testified that the clothing was photographed because at that point in time, it was evidence in plain view in order to preserve what was actually seen where Appellant was picked up. (3 RR 31). Investigator Paul Silva accompanied Lara and Appellant into the questioning room, a small 10x12 office with desk, files, and filing cabinet. (3 RR 32). The investigators weapons were removed from them before entering the room.

Before speaking to Appellant, Lara asked one of the detention officers to bring appropriate clothing in order to remove and secure Appellant's clothing, which they believed contained evidence of the crime. (3 RR 33). Once other clothing was brought, they asked Appellant to remove his clothing and that clothing was seized - his shirt, blue jeans, and tennis shoes - and packed appropriately. (3 RR 33). When Appellant took off his clothing, Lara notice a suspicious bulge in front of his crotch, so Lara asked Appellant to pull down his underwear, Lara saw a plastic bag which contained money. (3 RR 33). Lara was suspicious that there was something Appellant may have had in his crotch area

because the front portion of his underwear was protruding. (3 RR 34). Before he lowered his underwear, Lara saw what looked like the edging of a plastic bag. (3 RR 34). The plastic bag was confiscated. (3 RR 34). The plastic bag contained about 427 dollars. (3 RR 35). The money was blood-stained. (3 RR 35). The plastic bag and money was confiscated because of where it was, since it is not customary for a person to keep money there, and because they did not know whether an actual robbery occurred at the crime scene, and that needed to be determined. (3 RR 35). The blood on the money indicated that it was possible evidence of the murder. (3 RR 35).

# SUMMARY OF ARGUMENT

Appellant's legal insufficiency claim is without merit because the evidence, properly viewed in the light most favorable to the verdict, was legally sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt.

Appellant's jury charge error claim is without merit because the trial court did not err, but assuming without conceding the trial court did err, egregious harm did not occur in this case.

Appellant's abuse of discretion claim regarding the trial court's action in admitting Appellant's statement into evidence is without merit because the trial court did not err in admitting said statement.

Appellant's abuse of discretion claim regarding the trial court's action in admitting physical and blood evidence seized from Appellant is without merit because the trial court was correct on at least two theories of law applicable to that ruling based on implicit findings supported by the record.

Appellant's improper jury argument claim is waived on appeal because Appellant failed to preserve said issue.

**ARGUMENT AND AUTHORITIES**

**Counterpoint One (In Response to Issue No. One)**

*The evidence produced at Appellant's trial was legally sufficient to support the jury's guilty verdict beyond a reasonable doubt for the offense of Capital Murder of Rosa Angelica Arellano Lopez.*

**Argument:**

In Issue No. One, Appellant argues that the evidence produced at trial was legally insufficient to support the jury's guilty verdict. *See* Brief of Appellant, pp. 8-14. Appellant's claim is without merit.

**A. Rules and Principles**

A review of the legal sufficiency of the evidence does not involve any weighing of favorable and non-favorable evidence. Instead, when reviewing a case for legal sufficiency, the reviewing court views all of the evidence in the light most favorable to the verdict and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Winfrey v. State*, 323 S.W.3d 875, 878-79 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Accordingly, appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. at 879. "It has been said quite appropriately, that

1

'[t]he appellate scales are supposed to be weighted in favor of upholding a trial court's judgment of conviction, and this weighing includes, for example, the highly deferential standard of review for legal-sufficiency claims.'" *Id*.

The Court must therefore determine whether the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that appellant committed the crime for which the jury found him guilty. *See Id*. It is the obligation and responsibility of appellate courts "to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime that was charged." *See Id*. at 882. In determining the legal sufficiency of the evidence, appellate courts will properly consider all of the evidence, admissible and inadmissible. *See Johnson v. State*, 967 S.W.2d 410, 412 (Tex. Crim. App. 1998). That is, even evidence erroneously admitted is properly considered in a legal sufficiency review. *See Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994).

Sufficiency of the evidence is measured against the elements of the offense as defined in a hypothetically correct jury charge. *See Wheaton v. State*, 129 S.W.3d 267, 272 (Tex. App.—Corpus Christi 2004, no pet.). "Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for

which the defendant was tried." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

In analyzing the verdict, appellate courts recognize that the jury is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See Ozuna v. State*, 199 S.W.3d 601, 610 (Tex. App.—Corpus Christi 2006, no pet.). The jury may accept or reject all or part of the evidence. *See Id.* The jury may also draw reasonable inferences and make reasonable deductions from the evidence. *See Id.*; *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (jurors are permitted to make reasonable inferences from the evidence, whether direct or circumstantial, and circumstantial evidence alone can be sufficient to establish guilt). Thus, when performing a legal sufficiency review, appellate courts may not re-evaluate the weight and credibility of the evidence and substitute their judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000).

## B. Applicable Law

Appellant was found guilty by jury for Capital Murder. A conviction for Capital Murder, as charged in the indictment in the instant case, requires the State to prove beyond a reasonable doubt that a person intentionally commits murder in the course of committing or attempting to commit the offense of Robbery. CR 2, 486; s*ee also* TEX. PENAL CODE § 19.03(a)(2) (Vernon 2001). A person commits

3

the offense of murder if he intentionally or knowingly causes the death of an individual. *See* TEX. PENAL CODE § 19.02(b)(1) (Vernon 2001). A person commits the offense of robbery if, in the course of committing theft as defined in Chapter 31 and with intent to obtain or maintain control of property, he intentionally, knowingly, or recklessly causes bodily injury to another. *See* TEX. PENAL CODE § 29.02(a) (Vernon 2001). A person commits the offense of theft if he unlawfully appropriates property with intent to deprive the owner of the property. *See* TEX. PENAL CODE 31.03(a) (Vernon 2001). Appropriation of property is unlawful if it is without the owner's effective consent. *See* TEX. PENAL CODE § 31.03(b) (Vernon 2001).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE § 6.03(a) (Vernon 2001). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist; A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. TEX. PENAL CODE § 6.03(b) (Vernon 2001).

4

The jury charge allowed the jury to convict Appellant as either a principal or as party for Capital Murder. *See* CR 486-501. To prove that Appellant was guilty of Capital Murder, under a party theory, the State was required to show that he was criminally responsible for the actions of another under TEX. PENAL CODE § 7.02. The jury charge in the instant case provided an instruction on the law of parties under TEX. PENAL CODE § 7.01and § 7.02. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE § 7.01(a) (Vernon 2001). Each party to an offense may be charged with commission of the offense. *See* TEX. PENAL CODE § 7.01(b) (Vernon 2001). Circumstantial evidence alone may also be used to prove that a person is a party to an offense. *See, e.g., Powell v. State*, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); *Ransom v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994); *Beardsley v. State*, 738 S.W.2d 681, 684 (Tex. Crim. App. 1987); *Escobar v. State*, 28 S.W.3d 767, 774 (Tex. App. – Corpus Christi 2000, pet. ref'd).

A person is criminally responsible for an offense committed by the conduct of another if acting with the intent to promote or assist the commission of the offense, he or she solicits, encourages, directs, aids or attempts to aid the other person to commit the offense. *See* TEX. PENAL CODE § 7.02(a)(2) (Vernon 2001). If, in the attempt to carry out a conspiracy to commit one felony, another felony is

5

committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying of the conspiracy. *See* TEX. PENAL CODE § 7.02 (b) (Vernon 2001). It is proper to submit a jury charge on either Section 7.02 (a)(2) or Section 7.02 (b), although those concepts are not alleged in the indictment. *See, e.g., Powell*, 194 S.W.3d at 506; *Sorto v. State*, 173 S.W.3d 469, 476 (Tex. Crim. App. 2005); *Marable v. State*, 85 S.W.3d 287, 287-88 (Tex. Crim. App. 2002); *Goff v. State*, 931 S.W.2d 537, 544 n. 5 (Tex. Crim. App. 1995).

**C. Analysis**

  **a. The evidence is sufficient to show Appellant was involved in the stabbing death of the victim during the course of committing robbery**

  The facts reveal that David Gonzalez saw two males in dark clothing leave the parking lot of the West Point Convenient Store in Mission, TX; the two males drove off in a beige-colored Ford Escort or Taurus. (5 RR 32, 47). Once Gonzalez discovered the victim's body, he exited the store and called 911, and provided a description of the two males. (5 RR 34, 47). Shortly after, Deputy George Luis Lopez spotted the suspect vehicle drive into the Lucky Seven gas station. (6 RR 10). Lopez saw that a passenger fitting the description of one of the suspects exit the vehicle and enter the Lucky Seven Store; Lopez parked behind the suspect

6

vehicle and ordered Appellant to get out of the vehicle. (6 RR 15-16). Appellant wore dark, blood-stained jeans containing a DNA profile consistent with that of the victim. (6 RR 18-19; 8 RR 86). The blood on Appellant's shoes contained a DNA profile consistent with that of the victim. (8 RR 86). The "v" pattern of Appellant's right shoe matched the "v" pattern bloody foot prints, found near the victim's body at the crime scene. (8 RR 110-111). Blood found in the lower driver's side dashboard of the vehicle Appellant had been driving contained a DNA profile consistent with that of the victim. (8 RR 87).

Furthermore, Appellant originally identified himself as "Antonio Hernandez," but later admitted his real name to be "Jose Isaac Reyes" when he was giving his statement to Investigator Alfredo Lara.[7] (9 RR 43). Dr. Salinas found a total of about 35 stab wounds on the victim, caused by a single-edged blade or any other object that had the same characteristics of a single-edged blade. (9 RR 82). Dr. Salinas concluded that all together, the victim's stab wounds could have killed her, but some of the stab wounds, separately, could also have killed her. (9 RR 90). All the strong circumstantial evidence mentioned above clearly indicates that Appellant was involved in the stabbing death of the victim, however, investigators ultimately did not locate a murder weapon. (8 RR 20-26; 9 RR 64). Viewing the

---

[7] Providing a false name is some evidence of consciousness of guilt on the part of the Appellant. *See Rodriguez v. State*, 2008 Tex. App. LEXIS 7631, *9-10 (Tex. App.-Corpus Christi 2008)(not designated for publication)(citing *Hargrove v. State*, 211 S.W.3d 379, 387 (Tex. App.-San Antonio 2006, pet. ref'd)(defendant gave false name indicating consciousness of guilt)).

7

evidence as a whole, the jury could have reasonably inferred that Appellant murdered the victim with a knife or unknown object.

At the Sheriff's Office, Investigator Lara discovered and confiscated a plastic bag containing $427.50 stuffed inside Appellant's underwear; Juan Carlos Martinez, business owner of the West Point County Store, testified that after the murder, a plastic box containing a plastic bag with money from the sales of calling cards was never recovered. (9 RR 22; 5 RR 80-82); *see* Footnote 3 of this brief. The jury could have reasonably inferred that this plastic bag of $427.50 found in Appellant's pants was the same plastic bag of money missing from the West Point Country Store the day of the murder. Thus, the jury could have reasonably determined that Appellant also committed the offense of robbery. This evidence, along with the evidence discussed in the previous paragraph, enabled the jury to reasonably conclude that Appellant committed the offense of Capital Murder in the course of committing robbery.

### b. The evidence is sufficient to show that Appellant committed Capital Murder either as a principal or party.

The State has already shown above that the evidence presented to the jury, viewed in the light most favorable to the verdict, proved beyond a reasonable doubt that Appellant was involved in the murder of the victim in the course of committing robbery. However, Appellant distinctly argues that the evidence was

8

insufficient to prove Appellant committed the offense of Capital Murder as a principal or a party. Brief of Appellant, pp. 8-14.

Based on the evidence discussed above, the jury could have reasonably concluded that Appellant was guilty of Capital Murder as a principal. Whether the jury was entitled to consider Appellant a party or coconspirator primarily depends on the weight attributed to Appellant's statement and his trial testimony. In his statement, Appellant admitted that after going inside the store to buy beer, he 'turned around' and saw his brother stabbing the clerk; his brother asked Appellant to help him; Appellant helped his brother by holding the victim to restrain her movements while his brother stabbed her with a knife. (9 RR 43-44). However, at trial, Appellant's testimony of what happened the day of the murder was different from what he had said in his statement. Appellant had testified that they were originally going into the convenient store to buy beer and that he did not know that he and his brother were going to rob the convenient store, or that his brother had the idea to rob the convenient store. (9 RR 110). Appellant testified that while he grabbed some beer, his brother indicated he wanted to take money from the store, and told Appellant what to do. (9 RR 110). Appellant testified that he complied, took hold of the victim and walked her to the 'back' room. (9 RR 111). Appellant testified that shortly after walking the victim to the 'back' room, his brother pushed him out of the way and began stabbing the victim. (9 RR 112).

9

If the jury believed Appellant's statement, they could have reasonably inferred that Appellant 'aided' in murdering the victim by holding down the victim while his brother stabbed her.  *See* TEX. PENAL CODE § 7.02(a)(2) (Vernon 2001). If the jury believed Appellant's trial testimony, they could have reasonably inferred that an agreement formed between Appellant and his brother to rob the convenient store for money once they went inside.  *See* TEX. PENAL CODE § 7.02(b) (Vernon 2001).  The jury could also have reasonably concluded that the killing of the victim was committed in furtherance of the conspiracy to rob the convenient store, possibly for the purpose of eliminating witnesses to the robbery, and they could have reasonably concluded that the killing of the victim should have been anticipated as a result of the carrying of the conspiracy.  *See Id*.  Thus, the evidence presented to the jury, viewed in the light most favorable to the verdict, proves beyond a reasonable doubt that Appellant committed Capital Murder in the course of committing robbery as a principal, party, or coconspirator.  *See Winfrey*, 323 S.W.3d at 878-79.  As such, Appellant's issue no. one should be OVERRULED.

**Counterpoint Two (In Response to Issue No. Two)**

*Appellant's claim that the trial court erred when it did not include various instructions in the jury charge is without merit.*

**Argument:**

In Issue No. Two, Appellant argues that the trial court erred when it did not include an independent impulse charge, 38.23 charge on admission of Appellant's statement and blood evidence, or converse parties charge in the jury charge. *See* Brief of Appellant, pp. 14-20.

**A. Standard of Review -** *Almanza*

Because Appellant did not properly object to any of the alleged jury charge errors at trial, and did not make a request, Appellant will only obtain reversal if the alleged errors, assuming without conceding it exists, was egregious. *See* Brief of Appellant, p. 15 (conceding defense counsel did not object to the jury charge); *see also Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (describing "egregious harm"). Under *Almanza*, courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole. *See Almanza*, 686 S.W.2d at 171.

## B. Independent Impulse Instruction

Appellant's argument that the trial court should have included an "independent impulse" in the jury charge has no basis in law. The Texas Court of Criminal Appeals has clearly held that defendants are not entitled to a defensive charge on "independent impulse," thus it was not error for the trial court to not include such an instruction. *See Solomon v. State*, 49 S.W.3d 356, 368 (Tex. Crim. App. 2001). The Texas Court of Criminal Appeals reasoned that "there is no enumerated defense of "independent impulse" in the Penal Code…" and that a "…appellant's proposed defensive issue [of independent impulse] would simply negate the conspiracy liability element of the State's case. All that is required, then, is for the appropriate portions of the jury charge to track the language of § 7.02(b)." *See Id*. The State will not address Appellant's invitations for this Court to disregard *Solomon*.

## C. Converse Parties Instruction

Appellant argues that the trial court failed to include a "converse parties" instruction in the jury charge. This claim is inadequately briefed and as such, there is nothing for the State to respond to. *See* TEX. R. APP. P. 38.1(i). The State contends that this Court should refrain from addressing this issue.

12

## D. 38.23 Instructions

### 1) Applicable Law

In *Oursbourn v. State*, 259 S.W.3d 159, 173-73 (Tex. Crim. App. 2008), the Texas Court of Criminal Appeals explained that Texas law allows for jury instructions on three different types of "voluntariness" issues: (1) a general instruction on voluntariness under article 38.22 § 6, (2) a warnings instruction under article 38.22 § 7, and (3) a specific voluntariness instruction for constitutional due process claims under article 38.23. Article 38.23 provides in relevant part:

> No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.
>
> In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. art. 38.23(a) (Vernon 2001). The trial court has a duty to give an article 38.23 instruction sua sponte if three requirements are met: (1) evidence heard by the jury raises an issue of fact, (2) the evidence on that fact is affirmatively contested, and (3) the contested factual issue is material to the lawfulness of the challenged conduct in obtaining the statement claimed to be

13

involuntary. *Oursbourn*, 259 S.W.3d at 177, 180-81. A statement is obtained in violation of constitutional due process only if the statement is causally related to coercive government misconduct. *Id*. at 169-71. Coercive government misconduct renders a confession involuntary if the defendant's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973). Whether this has occurred is determined by assessing the "totality of all the surrounding circumstances," including "the characteristics of the accused and the details of the interrogation." *Id*.

### 2) Appellant's claims are without merit

#### a) Blood evidence

Appellant's claim regarding the blood evidence is inadequately briefed. *See* TEX. R. APP. P. 38.1(i). Appellant does not argue how the manner in which Appellant's blood was seized constituted unconstitutional State action, nor has Appellant cited any case law that would shed light on this contention. Conceptually, voluntariness as related to blood evidence would only be a concern if Appellant's consent was involved. In this case, consent was not involved, but rather, blood samples were taken pursuant to a valid search warrant signed by Judge Noe Gonzalez of the 370th District Court. (7 RR 42). As such, the evidence does not raise the issue of voluntariness in regards to the seizure of Appellant's

14

blood. Thus, the trial court did not err in when it did not include a 38.23 instruction on the blood evidence.

### b) Appellant's statement

#### i) Appellant has not shown error in regards to his first, second, and fourth grounds

Appellant cites *Oursbourn* for the proposition that a Court should submit a 38.23 instruction to the jury when voluntariness of a confession is raised by the evidence. *See* Brief of Appellant, p. 17. Appellant argues that voluntariness was raised because of (1) Appellant's "illegal alien status," (2) Appellant could only speak Spanish, (3) Appellant's statement that "the police threatened him with the needle if he didn't sign," and (4) the police's failure to allow Appellant to consult with the Mexican Consulate. *See Id*. In regards to his first ground, Appellant has not cited case law demonstrating that a defendant's citizenship, alone, raises the question of voluntariness and the State cannot find any.[8] Furthermore, Appellant's citizenship was not a material, affirmatively contested fact issue at trial, thus Appellant has failed to satisfy the *Oursbourn* test. *See Oursbourn*, 259 S.W.3d at 177, 180-81.

Likewise, in regards to his second ground, Appellant has not cited case law demonstrating that a defendant's monolingual fluency in Spanish, or any other

---

[8] Appellant cites *Rodgers v. State*, 549 S.W.2d 726 (Tex. App. 2007), a case involving the voluntariness of a confession from an intellectually-disabled defendant, not a non-US citizen.

language other than English, alone, raises the question of voluntariness, and the State has not found any.[9] In addition, the record reflects that when giving his statement, Appellant was provided his *Miranda* rights in Spanish by Investigator Lara, who was fluent in Spanish, and the two successfully communicated in Spanish.[10] (9 RR 26-30, 35-36). Thus, Appellant's fluency in Spanish and not English was not a material, affirmatively contested fact issue at trial. As such, Appellant has failed to satisfy the *Oursbourn* test. *See Oursbourn*, 259 S.W.3d at 177, 180-81.

In regards to his fourth ground, Appellant has cited case law demonstrating that the denial of a defendant from speaking with a foreign consulate, violating a provision of the Vienna Convention, raises the question of voluntariness.[11] *See Cardona v. State*, 973 S.W.2d 412 (Tex. App. Austin 1998). In *Cardona*, the State notified the Mexican Consulate of the defendant's arrest, but failed to inform the defendant of his right to access his consulate. *Id*. at 417. The Austin Court of Appeals nevertheless held that the error did not merit reversal of the defendant's conviction because the defendant failed to show how the error affected his

---

[9] Appellant also misplaces his reliance on *Rodgers* for this proposition as well.

[10] Appellant and Lara spoke to each other in Spanish, while Lara wrote down Appellant's statement in English; the witness testimony also reflects that Lara asked Appellant if he wanted any changes after he would translate what he wrote in English to verbal Spanish. (9 RR 35-36). Furthermore, Appellant and Lara's ability to understand each other was not contested at trial.

[11] Appellant also cites to *Juarez v. State,* 308 S.W.3d 398 (Tex. Crim. App. 2010) to support this proposition, but this case is not on point and therefore is not relevant.

16

"substantial rights." *Id*. at 418. However, shortly after *Cardona* was decided, the Texas Court of Criminal Appeals held that Texas's exclusionary rule, Article 38.23(a), does not apply to treaties, including the Vienna Convention. *See Rocha v. State*, 16 S.W.3d 1, 42-46 (Tex. Crim. App. 2000). As violations of the Vienna Convention are not held to raise voluntariness, the trial court could not have erred by omitting to place a 38.23 instruction in the jury charge for this reason. *See Id*.

### ii) Appellant cannot prove he was egregiously harmed in regards to his third ground

In his third ground, Appellant claims that "the police threatened him with the needle if he didn't sign [his statement]." *See* Brief of Appellant, p. 17. At trial, Appellant testified that "They [the police] told me I had to sign the paper [Appellant's Statement] so 'that things would go better for me.' That, if I didn't sign, they were going to give me the needle, death." (9 RR 109). This testimony contrasted with that of Investigator Lara, who testified that Appellant was not coerced into providing a statement. (9 RR 31-34). After Appellant testified, the State brought back Investigator Lara, who testified that he did not say or do any of the things Appellant claimed, mentioned above. (9 RR 135). Accordingly, Appellant has satisfied the first two prongs of the *Oursbourn* test. *See Oursbourn*, 259 S.W.3d at 177, 180-81.

The State will not address the applicability of the third prong of the *Oursbourn* test; however, assuming without conceding that Appellant has properly

17

satisfied the third prong, the State will now directly address why Appellant has not proven that he suffered egregious harm. *See Oursbourn*, 259 S.W.3d at 177, 180-81; s*ee also Almanza,*686 S.W.2d at 171. The State would remind this Court that Appellant neither requested said instruction nor objected to its exclusion. Appellant does not discuss any of the *Almanza* factors in his brief.

The first *Almanza* factor requires this Court to consider the entirety of the jury charge. (CR 486-501). In this case, the charge instructed the jury that Appellant was charged with Capital Murder and that "unless you so find beyond a reasonable doubt, of [sic] if you have a reasonable doubt thereof, you will acquit the Defendant of Capital Murder." The charge allowed the jury to convict Appellant for Capital Murder as a principal, party, and coconspirator. *Id*. The charge also allowed the jury to convict Appellant for the lesser-included offense of Murder and Robbery. *Id*. The charge contained many legal definitions as they applied to the case. *Id*. The charge also contained general language, informing the jury that (1) the defendant is presumed innocent; (2) the prosecution has the burden to prove the defendant guilty by proving every element of the offense beyond a reasonable doubt; (3) the burden of proof rests on the State throughout the trial and never shifts to the defendant; and (4) the jury is the exclusive judges of the facts proved, of the credibility of the witnesses, and the weight of their testimony. *Id*.

Assuming the charge was erroneous by omission of an Article 38.23 instruction, as a whole, the jury charge did not further compound any harm suffered.

The second *Almanza* factor requires this Court to consider the state of the evidence. In this case, Appellant's testimony created a fact issue as to whether he was coerced by the police into signing his written confession. Appellant's testimony primarily served to negate his guilt for the offense *as a principal*, creating a fact issue which was related to the jury charge error. However, no harm can be shown on this basis. Despite the lack of the Article 38.23 instruction, the conflicting testimony was clearly resolved in the State's favor. Implicit in Appellant's argument is the contention that if the jury determined that his statement was coerced, and therefore unconstitutional, the State would have had no evidence connecting him to the murder. The State has already shown above in its response to Appellant's issue no. one that the evidence was legally sufficient for the jury to reasonably conclude that Appellant was guilty of the murder.

Considering the mountain of circumstantial and direct evidence, the jury could also have reasonably found Appellant guilty even without his statement. Furthermore, Appellant testified that he helped his brother stab and kill the victim by walking her to a 'backroom' and holding her down.[12] (9 RR 107). Thus,

---

[12] Appellant admitted as much during direct examination, but would later recant this during cross-examination by the State. (9 RR 123-24). A quick examination of Appellant's testimony reveals many conflicting and inconsistent statements during direct and cross examination.

19

Appellant's own testimony could have contributed to a finding of guilt for Capital Murder as a party or coconspirator. The State contends that in order to have acquitted Appellant, the jury would have had to discredit all testimony, including Appellant's. If that were the case, the jury would have never reached the issue of the legality of Appellant's statement. Under the particular facts of this case, any showing of harm would amount to theoretical, rather than action harm.

The third *Almanza* factor requires this Court to consider the arguments of counsel. Defense counsel addressed Appellant's testimony regarding the alleged coercion but did not stress the issue to the jury. (9 RR 42-43). Instead, much of the focus of the defensive theory during closing argument attacked the credibility of the police officers and their investigative procedures. (9 RR 33-64). Also, defense counsel argued that Appellant did not commit Capital Murder or Murder, but did commit Robbery. (9 RR 47). The fourth *Almanza* factor requires this Court to consider other relevant information contained in the record. The State contends that it bears repeating that Appellant affirmatively confirmed to the trial court that it had no objections to the jury charge. (11 RR 4). After reviewing the entire record under the appropriate *Almanza* harm analysis standard, it is apparent that egregious harm has not occurred in this case. As such, Appellant's issue no. two should be OVERRULED.

**Counterpoint Three (In Response to Issue No. Three)**

*The trial court did not commit reversible error when it admitted Appellant's statement into evidence.*

**Argument:**

In Issue No. Three, Appellant argues the trial court reversibly erred when it admitted Appellant's statement into evidence. *See* Brief of Appellant, p. 20. Appellant's claim is without merit.

**A. Rules and Principles**

**1) Standard of Review**

A motion to suppress is, in its essence, a specialized form of objection. *See Gutierrez v. State*, 327 S.W.3d 257 (Tex. App. San Antonio 2010, no pet.). The trial court's ruling as to a motion to suppress a defendant's statement is reviewed on an abuse-of-discretion standard. *See Moseley v. State*, 223 S.W.3d 593 (Tex. App.—Amarillo 2007), *affirmed*, 252 S.W.3d 398 (Tex. Crim. App. 2008). The same standard applies in appellate review of a trial court's rulings on admissions of evidence generally. *See, e.g. Russeau v. State*, 291 S.W.3d 426 (Tex. Crim. App. 2009, *cert. denied*). An abuse of discretion as to a rule admitting evidence is to be found only when there existed no evidence upon which the trial court ruling could rest. *See Osbourn v. State*, 92 S.W.3d 53, 538 (Tex. Crim. App. 2002). In a

hearing on a suppression motion, the trial court sits as sole trier of the facts. *See*

*Valtierra v. State*, 310 S.W.3d 442 (Tex. Crim. App. 2010).

### 2) Preservation of Error

In order to preserve error for review on appeal, the defendant must make a

specific, timely objection, and receive an adverse ruling at trial. TEX. R. APP. P.

33.1(a); *Jaynes v. State*, 216 S.W.3d 839, 850 (Tex. App.—Corpus Christi 2006,

no pet.). "Even constitutional errors may be waived by failure to object at trial."

*Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990); *see Heidelberg v.*

*State*, 144 S.W.3d 535, 542-43 (Tex. Crim. App. 2004) (holding that state

constitutional issues are not preserved even when counsel's complaint at trial relied

on federal grounds). Furthermore, the legal basis of the complaint raised on appeal

must comport with the complaint raised at trial. *Heidelberg*, 144 S.W.3d at 537;

*Butler v. State*, 872 S.W.2d 227, 236 (Tex. Crim. App. 1994).

### B. Analysis

At a pretrial hearing, Appellant's trial attorney argued that Appellant's

statement should be suppressed because Appellant was not given the proper

*Miranda* warnings. (3 RR 80-84). Appellant argued that the Spanish *Miranda*

warnings given to him were not in compliance with TEX. CODE CRIM. PROC. art.

38.22 because the waiver document that Appellant had signed prior to giving his

statement "failed to mention that – anything that we use against him in court. It

22

only mentioned trial." (3 RR 82). The trial court denied Appellant's motion to suppress his statement. (3 RR 84). At trial, once the State attempted to admit Appellant's statement into evidence as State's Exhibit 117, Appellant renewed his same pretrial objection. (9 RR 41). Again, the trial court denied Appellant's objection and admitted Appellant's statement into evidence. (9 RR 41).

Appellant has lodged several complaints as to why the trial court erred when it admitted Appellant's statement.[13] *See* Brief of Appellant, pg. 20-21. Appellant has failed to preserve error because the legal basis of the complaints raised on appeal do not comport with the complaints raised at trial. (3 RR 80-84; 9 RR 41). *See Heidelberg*, 144 S.W.3d at 537; *Butler*, 872 S.W.2d at 236. The State is aware that Appellant does complain on appeal that the trial court admitted Appellant's statement in violation of Art. 38.22, which was the legal basis of the motion to suppress and objection at trial. Accordingly, this is the only complaint reviewable on appeal. The State will only address the complaint regarding Art. 38.22 that

---

[13] Appellant argues that admitting Appellant's statement violated:
1. 5th Amendment of the United States Constitution (Due Process Clause)
2. 5th Amendment of the United States Constitution (Spirit of Miranda and the warnings)
3. Article 1 § 10,13 and 19 of the Texas Constitution (Due Course of Law)
4. 6th Amendment of the United States Constitution (right to confrontation and the right to test reliability of evidence)
5. 6th Amendment of the United States Constitution (Fair Trial)
6. 14th Amendment of the United States Constitution (Due Process incorporated to the states-Equal Protection)
7. International Treaty-Vienna Convention Article 36(1)(b)-requirement of consultation with the consulate
8. Article 38:22 of the Texas Code of Criminal Procedure.
9. Article 38:23 of the Texas Code of Criminal Procedure.

comports with the complaint at the hearing on the motion to suppress and objection at trial. All other complaints regarding Art. 38.22 that Appellant has lodged on appeal simply do not comport to those presented at the hearing on the motion to suppress or the objection at trial, and are therefore waived due to Appellant's failure to preserve error.[14] *See* Brief of Appellant, p. 26-28; *see Heidelberg*, 144 S.W.3d at 537; *Butler*, 872 S.W.2d at 236. 3300788

As previously mentioned above, at the hearing on the motion to suppress and as a renewed objection at trial, Appellant complained that admitting Appellant's statement into evidence would violate Art. 38.22 because the Spanish *Miranda* warnings provided to him were not in compliance with that provision. The waiver document that Appellant had signed prior to giving his statement "failed to mention that – anything that we use against him in court. It only mentioned trial." (3 RR 82). Appellant relied on *State v. Subke*, 918 S.W.2d 11 (Tex. App.—Dallas 1993), as support that using the term "trial" as opposed to "court" violates Art. 38.22. (3 RR 81). The State argued that *Subke* was distinguishable because it dealt with an "oral statement, oral reading," that there was prior rulings by the Texas Court of Criminal Appeals dealing with substantial compliance with Art. 38.22, and that the Spanish *Miranda* waiver form was translated in such a way that the

---

[14] The State would like to further point out that Appellant failed to develop any evidence, *before the statement was admitted*, to which the trial judge could have ruled in Appellant's favor in regards to many of the arguments he tenders on appeal.

24

right encompassed both "court" and "trial." (3 RR 83). The trial court's interpreter, after reviewing a dictionary, confirmed that the Spanish translation encompassed both. (3 RR 83).

Because the Spanish *Miranda* waiver form was confirmed by the trial court's interpreter that the translation encompassed both "court" and "trial," the trial court plainly had evidence to support the contention that said waiver form was in substantial compliance with Art. 38.22, and therefore, there was no violation of said provision. It is clear that this Court cannot find that the trial court abused its discretion by admitting Appellant's statement because there was evidence upon which the trial court ruling could rest. *See Osbourn*, 92 S.W.3d at 538. Appellant cannot demonstrate that the trial court abused its discretion when it admitted Appellant's statement. As such, Appellant's issue no. three should be OVERRULED.

## Counterpoint Four (In Response to Issue no. Four)

*The trial court did not commit reversible error when it admitted physical and blood evidence seized from the Appellant.*

## Argument:

In Issue No. Four, Appellant argues the trial court reversibly erred when it admitted physical and blood evidence from the Appellant. *See* Brief of Appellant, pp. 28-29. Appellant's claim is without merit.

### A. Rules and Principles

### 1) Standard of Review

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge."). An appellate court will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *See Torres*, 71 S.W.3d at 760; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (setting out that a trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree"). In applying the abuse of discretion standard, an appellate court may not reverse a trial court's admissibility decision solely

because the appellate court may disagree with it. *See Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). Furthermore, when the trial court fails to file findings of fact, the appellate court will view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *See Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). Appellate courts then review de novo whether the implied facts are sufficient to provide legal justification for admitting the complained-of evidence. *See Morrison v. State*, 71 S.W.3d 821, 827 (Tex. App.--Corpus Christi 2002, no pet.) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)). An appellate court will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

**2) Preservation of Error**

For purposes of this section, the State refers to and reincorporates the rules and principles found in page 22 of this brief, under Counterpoint Three, subheading "A", subsection "2" ("Preservation of Error").

**3) Applicable Law**

The Fourth Amendment of the United States Constitution and article I, section 9 of the Texas Constitution guarantee the right to be secure from

unreasonable searches and seizures made without probable cause. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9; *see Walter v. State*, 28 S.W.3d 538, 540-41 (Tex. Crim. App. 2000). Warrantless intrusions and searches are presumptively unreasonable. *United States v. Karo*, 468 U.S. 705, 717 (1984). A warrantless search is permissible only in rare circumstances. *Katz v. United States*, 389 U.S. 347, 357 (1967). The burden of proving any exception to the warrant requirement falls on the prosecution. *McDonald v. United States*, 335 U.S. 451, 455-56 (1948).

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX. CODE CRIM. PROC. art. 38.23(a) (Vernon 2001). An exception is the plain view doctrine. The plain view doctrine provides that, if an officer perceives a suspicious object while lawfully engaged in an activity in a particular place, that officer may immediately seize the object. *Zayas v. State*, 972 S.W.2d 779, 785 (Tex. App.-Corpus Christi 1998, pet. ref'd.) (citing *Texas v. Brown*, 460 U.S. 730, 739 (1983); *Harris v. United States*, 390 U.S. 234, 236 (1968) (per curiam); *Clark v. State*, 548 S.W.2d 888, 889 (Tex. Crim. App. 1977)). Such seizure is presumptively reasonable, assuming that there

is probable cause to associate the property with criminal activity. *Id.* (citing *Arizona v. Hicks*, 480 U.S. 321, 326-37 (1987)).

Items in "plain view" may be seized by law enforcement personnel if (1) the initial intrusion was proper, that is, the police have a right to be where they are when the discovery is made; and (2) it is "immediately apparent" to the police that they have evidence before them (probable cause to associate the property with criminal activity). *Walter*, 28 S.W.3d at 541 (citing *Horton v. California*, 496 U.S. 128, 134-36 (1990)); *Haley v. State*, 811 S.W.2d 600, 603 (Tex. Crim. App. 1992) (en banc). The incriminating nature of an item is "immediately apparent" if the officer has probable cause to believe that the item is either evidence of a crime or contraband. *See Brown*, 460 U.S. at 742. Probable cause does not demand any showing that such a belief be correct or more likely true than false. *Id.*

## B. Analysis

### 1) Blood evidence seized from Appellant's vehicle

At trial, the State offered blood samples into evidence obtained from Appellant's vehicle on February 5, 2002, pursuant to a search warrant signed by a District Court judge on February 4, 2002. (3 RR 52-55, 8 RR 29-40). This evidence included State's Exhibits 100, 103, and 104.[15] (8 RR 35, 38-49). Appellant did not object to the admission of these blood samples, and the trial

---

[15] Currency of $1.37, referred to as "Item 33" by the witness, was found in the vehicle, but was not offered into evidence.

court admitted them as evidence; Appellant affirmatively stated he had no objections. (8 RR 35, 38-49). The State would also note that Appellant did not object to the admission of the blood evidence seized from Appellant's vehicle at the hearing on the motion to suppress. (3 RR 84-88). As such, Appellant has failed to preserve this issue on appeal. *See* TEX. R. APP. P. 33.1(a); *Jaynes*, 216 S.W.3d at 850. Furthermore, even if Appellant objected, the basis of Appellant's claim that the search warrant was untimely executed is without merit. *See* Brief of Appellant, p. 29. Article 18.06 and 18.07 hold that a search warrant must be executed within three days from the time of its issuance. *See* TEX. CODE CRIM. PROC. art. 18.06, 18.07 (Vernon 2001). The search warrant in the instant case was signed on February 4, 2002, and executed the very next day in compliance with Article 18.06 and 18.07. (3 RR 52-55). *See Id*.

**2) Blood evidence seized from Appellant**

At trial, the State offered blood and hair samples taken from Appellant that was obtained by a nurse at an emergency room in McAllen Medical Center, pursuant to a search warrant signed by a District Court Judge on January 17, 2003, and executed that same day. (7 RR 19-35). These blood and hair samples were entered into evidence as State's Exhibits 27 and 30 respectively. (7 RR 32, 35). When the State offered State's Exhibits 27 and 30, Appellant affirmatively stated he had no objections to admission of the evidence. (7 RR 32, 35). At the hearing

on the motion to suppress, Appellant did not specifically argue for suppression of the blood and hair samples taken from Appellant by the nurse at an emergency room in McAllen Medical Center. (3 RR 87-88). Rather, Appellant argued suppression for items seized from Appellant's person at the Hidalgo County Sheriff's Office prior to providing his statement. (3 RR 87-88). As previously mentioned above, the trial court denied the suppression motion. (3 RR 88). As such, Appellant has failed to preserve this issue on appeal. *See* TEX. R. APP. P. 33.1(a); *Heidelberg*, 144 S.W.3d at 537.

### 3) Clothing and Plastic Bag of Money seized from Appellant's person

At trial, the State offered into evidence Appellant's clothing and US currency of $427.50 that was seized from Appellant at the Hidalgo County Sheriff's Office prior to Appellant providing his statement. The clothing evidence consisted of Appellant's shoes (State's Exhibits 59-A and 59-B, offered and admitted at 7 RR 103-106), Appellant's shirt (State's Exhibit 61, offered and admitted at 7 RR 109-10), and Appellant's blue jeans with black belt (State's Exhibit 65, offered and admitted at 7 RR 111-12). Appellant renewed his objections against admission of *some* of the clothing evidence as argued at the hearing on the motion to suppress with respect to this clothing evidence.[16] US currency of $427.50 was offered and

---

[16] Appellant's objections, with respect to Appellant's shoes, State's Exhibit 59-A and 59-B, are found in 7 RR 105; with respect to Appellant's blue jeans with black belt, State's Exhibit 65, 7 RR 112. Appellant affirmatively stated he had no objections to the admission of Appellant's

admitted as State's Exhibit 69, without objection by defense counsel. (7 RR 116).

Despite Appellant's failure to object with respect to some of the complained of

evidence, the State will assume but will not concede that Appellant has preserved

his complaints for purposes of this appeal.[17]

At the hearing on the motion to suppress, Appellant argued that he had been

under arrest, and not free to leave once he was transported to the Hidalgo County

Sheriff's Office from the Lucky Seven convenient store. (3 RR 87-88). The crux

of Appellant's legal argument against admission of the clothing was that it was

illegally obtained because the evidence was seized without Appellant's consent and

without a search warrant, violating Appellant's Fourth Amendment rights. (3 RR

88). Appellant did not present any case law supporting this proposition, and the

motion was subsequently denied by the trial court. (3 RR 88). Similarly,

Appellant has not presented any case law for this proposition on appeal. *See* Brief

of Appeal, p. 30. Because the trial court did not file findings of fact explaining its

decision to deny the motion to suppress, this Court must view the evidence in the

light most favorable to the trial court's ruling and assume that the trial court made

shirt, State's Exhibit 61, at 7 RR 110. This clothing was later analyzed for DNA comparison, discussed by State's witness Alejandro Madrigal, a forensic analyst with the TXDPS Crime Laboratory of Hidalgo County. (8 RR 64-85).

[17] The State acknowledges that the Texas Court of Criminal Appeals has held that error preservation is not an inflexible concept; a rule that says carefully preserved error can nonetheless be abandoned for appeal should not apply mechanically either. *Thomas v. State*, 408 S.W.3d 877, 884 (Tex. Crim. App. 2013).

implicit findings of fact that support its ruling as long as those findings are supported by the record. *See Carmouche*, 10 S.W.3d at 328. Thus, this Court should not disturb the trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz*, 279 S.W.3d at 344.

Because none of the evidence Appellant complains of was sponsored by a witness that had personal knowledge of its seizure at trial, it is apparent that the trial court based its decision to admit the evidence on its earlier pre-trial decision to deny Appellant's motion to suppress. Thus, this Court is confined to review the evidence presented at the hearing on the motion to suppress. Appellant complains that the evidence was taken without Appellant's consent, court order, warrant, or done pursuant to an arrest or booking procedure. *Brief of Appellant*, p. 30. "The Defendant was in the sheriff's office and was handcuffed. He could not have escaped or destroyed the evidence. Investigators made clear that at that time the Defendant had not been arrested, and as such there is no justification for the seizure of his clothing." *Id*. At the hearing on the motion to suppress, Investigator Lara testified that before Appellant was transported to HCSO, he had felt there was probable cause to arrest Appellant, but he did not formally inform Appellant of his arrest. (3 RR 27). Rather, Lara told Appellant he was being detained for further questioning. (3 RR 27). Lara felt there was probable cause to arrest because the Appellant's vehicle matched the description of the suspect vehicle leaving the

33

crime scene, Appellant's clothing was stained with blood, and an eye-witness identified the suspect vehicle and the suspect. (3 RR 27).

Viewing the evidence in the light most favorable to the trial court's ruling, it is apparent that the trial court made implicit findings that the police had probable cause to seize the complained of evidence and the record supports such a finding. *See Carmouche*, 10 S.W.3d at 328. Lara's testimony makes it clear that probable cause existed at the time Appellant was detained by officers. (3 RR 27). Thus, the seizure of the complained of evidence did not run afoul of Appellant's Fourth Amendment rights. Furthermore, the complained-of evidence was in plain view. When the complained-of evidence was seized at HCSO, officers already had probable cause to arrest Appellant, thus the initial intrusion was proper and it was "immediately apparent" to the police that they had evidence before them of a possible robbery connected to the murder of the victim. *See Walter*, 28 S.W.3d at 541; s*ee also Brown*, 460 U.S. at 742. Because the trial court's evidentiary ruling would be correct on the two theories discussed above, this Court should not disturb said evidentiary ruling. *De La Paz*, 279 S.W.3d at 344. As such, Appellant's issue no. four should be OVERRULED.

## Counterpoint Five (In Response to Issue No. Five)

*Appellant failed to preserve error and thus waived his complaint on appeal that the trial court committed reversible error when it allowed the State to make improper closing arguments.*

## Argument:

### A. Rules and Principles

For purposes of this section, the State refers to and reincorporates the rules and principles found in page 22 of this brief, under Counterpoint Three, subheading "A", subsection "2" ("Preservation of Error"), and further adds the following:

The essential requirement to preserve error for improper jury arguments is a timely, specific request that is refused by the trial court. *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007); *see also* TEX. R. APP. P. 33.1. "[A] defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal." *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *see also Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004) (holding failure to object to an allegedly "manifestly improper" jury argument forfeits the right to raise the issue on appeal, reaffirming *Cockrell*).

Even if a prosecutor's statement is so inflammatory and prejudicial that it cannot be cured by an instruction to disregard, the defendant is required to object and request a mistrial. *See Mathis v. State*, 67 S.W.3d 918, 926-27 (Tex. Crim. App. 2002) (holding an adverse ruling is required to preserve error when prosecutor called the defendant a "despicable piece of human trash" in closing argument). While some fundamental, absolute rights cannot be waived for failure to preserve an objection, improper jury argument does not fall into that category. *See Ladd v. State*, 3 S.W.3d 547, 569-70 (Tex. Crim. App. 1999) (holding complaint about State's argument violating defendant's right to due process was waived for failure to object).

## B. Analysis

Appellant complains that the prosecutor improperly argued that the jury could convict on less than a unanimous jury and that the defense could call the co-defendant to testify as a witness for him at trial. *See* Brief of Appellant p. 31. Though the State contends that Appellant has misconstrued the prosecutor's jury arguments and is generally incorrect in its articulation of the legal basis of his claims, Appellant has ultimately failed to preserve error. At no point during the complained-of arguments cited by Appellant did Appellant actually object to the trial court. (11 RR 28-33). *See Mathis*, 67 S.W.3d at 926-27. In addition,

36

Appellant also did not request a mistrial. *See Id*. Accordingly, Appellant has failed to preserve error, thus Appellant's Issue No. Five is waived.

## PRAYER

Wherefore, premises considered, the State of Texas prays the Court affirm the Judgment of the trial court.

Respectfully submitted,

RICARDO RODRIGUEZ, JR.
Criminal District Attorney
Hidalgo County, Texas


/s/ Luis A. Gonzalez


LUIS A. GONZALEZ, ASSISTANT
Criminal District Attorney
Hidalgo County, Texas


HIDALGO COUNTY COURTHOUSE
Edinburg TX 78539
Telephone #:  (956) 318-2300 ext. 8133
Facsimile #:  (956) 380-0407
luis.gonzalez@da.co.hidalgo.tx.us
State Bar No. 24083088

ATTORNEYS FOR APPELLEE

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document has <u>13847</u> words.

/s/ Luis A. Gonzalez
Luis A. Gonzalez

**CERTIFICATE OF SERVICE**

I hereby certify that I have sent a true and correct copy of the foregoing First Amended Brief of Appellee to counsel for Appellant, Mark and Pamela Alexander, 4009 S. Sugar Rd., Edinburg, TX 78539, via electronic service, on this the 1st day of July, 2015.

/s/ Luis A. Gonzalez
Luis A. Gonzalez